(23 Misc. Rep. 47.)

### ARMSTRONG v. KENNEDY.

#### (Cayuga County Court.     March, 1898.)

JUSTICES OF THE PEACE—JURISDICTION—CONSTITUTIONAL LAW.

> The charter of the city of Auburn of 1879 gave it one justice of the peace, and Laws 1881, c. 182, § 62, provided he should have jurisdiction in civil actions and proceedings cognizable by justices' courts of towns, except that the Auburn city court should have exclusive jurisdiction as against said justices within the city. *Held*, that the power and limitation thereof contained in this act were expressly authorized by Const. art. 6, § 18, as amended in 1869, providing that justices shall have such powers as shall be prescribed by law.

Appeal from justice court.

Action by Nelson Armstrong against Michael Kennedy in justice's court.    Judgment for plaintiff, and defendant appeals.    Affirmed.

Frank M. Leary, for appellant.

Oscar Tryon, for respondent.

UNDERWOOD, J.    The summons in this action, which was issued by the justice of the peace of the city of Auburn, was served on defendant in the town of Montezuma, in this county.    On the return day defendant appeared specially, and objected to the jurisdiction of the justice, challenging his right to send his process outside of the city of Auburn.    The objection was overruled, and ultimately the case proceeded to judgment against appellant.

The only question presented upon this appeal is that of the jurisdiction of the justice.    From the incorporation of the city of Auburn, in 1848, until the passage of its present charter (Laws 1879, c. 53), there were in the city three justices of the peace.    By the charter of 1879, a new court, called the "city court of the city of Auburn," was created, upon which was conferred, with other powers, jurisdiction in civil actions and proceedings cognizable by law in justices' courts.    By subsequent amendment, this jurisdiction was expressly limited to cases in which all the defendants resided, or at the time of the commencement of the action were, within the city of Auburn.    By the same charter of 1879, it was provided that, among other city officers elected by electors of the city at large, there should be one justice of the peace.    His place in the judicial scheme provided by the charter for the city appears defined as follows in section 62 of the charter, as amended by Laws 1881, c. 182:

"The justice of the peace shall have jurisdiction in civil actions and proceedings cognizable by law in justices' courts of towns, whether commenced by warrant, attachment, summons or otherwise, or whether on contract or otherwise, except that within the city of Auburn the city court shall have exclusive jurisdiction as against said justice of the peace."

As, under this charter, the city court was to have exclusive jurisdiction, as against the justice of the peace, within the city of Auburn, it seems clear that it was the legislative intent to confer upon the justice of the peace jurisdiction in those cases, usually cognizable in justices' courts, of which the city court could not assume jurisdiction because of its inability to send its process beyond the city limits. Thus construed, the charter provided the citizens of Auburn with a local court adapted to their needs, without depriving them of the right, enjoyed by the residents of towns, of prosecuting before a justice of the peace of their own town claims against residents of other towns of the same county. It is claimed, however, that, by the legislative provisions referred to relating to the justice of the peace, an attempt was made to create an inferior local court, and the constitutionality of the law is challenged for attempting to vest in this court power to send its process outside of the locality for which it was created. If such is the real purpose and meaning of this legislation the law would, beyond question, be unconstitutional.

It is urged by the respondent, however, that the legislation in question was not an attempt to create an inferior local court, but a legitimate exercise of the power given by section 18 of article 6 of the constitution, as amended in 1869, in the following language: "Justices of the peace and district court justices shall be elected in the different cities of this state, in such manner, and with such powers and for such terms respectively as shall be prescribed by law." This provision was introduced into the constitution in 1869. It was suggested, in the constitutional convention of that year, as an addition to the section providing for election of justices of the peace in towns, for the reason that otherwise there was no provision for justices of the peace in cities, or for police courts, except in the general clause in regard to local courts of inferior jurisdiction, thereafter to be organized. The delegate who made this proposition insisted that there should be no such distinction between the electors of cities and those of the country. See opinion of Smith, J., in People v. City of Rochester, 11 Hun, 243.

It would seem clear, therefore, that, independently of the provision for creation of inferior courts of local jurisdiction, the constitution, since 1869, has recognized justices of the peace in cities as a distinct class, whose powers, terms of office, and manner of election it was committed to the legislature to fix. And it is contended that, in the provisions of the charter of Auburn defining the powers of the justice of the peace of said city. and fixing his term of office and the time and manner of his election, the legislature was acting entirely under this constitutional right.

The appellant cites two recent cases decided by the appellate divi-

sion of the supreme court in this department as authority for his contention: Baird v. Helfer, 42 N. Y. Supp. 484; Zieglar v. Corwin, Id. 855. In both these cases the constitutionality of an act was challenged, which purported to confer upon the municipal court of the city of Rochester power to send its process anywhere within the county of Monroe. And it is clearly pointed out that the municipal court of Rochester was created as and was an inferior court of local jurisdiction, within the meaning of the constitution, and that its jurisdiction could only be exercised in the locality for which it was created, viz. the city of Rochester; that the language of the statutes, declaring that the court was "to be deemed a justice's court, each judge thereof a justice of the peace, and the city of Rochester a town of Monroe county," was simply an attempt to evade the purpose and intent of the constitution, and to give to an inferior local court jurisdiction which the constitution forbade. Both these cases are clearly distinguishable from the case at bar.

Under the charter of the city of Auburn, the inferior court of local jurisdiction was the city court of the city of Auburn. Its powers were by the statute strictly confined to the locality for whose benefit it was created, while, by modifying and defining the duties and powers of the justice of the peace of the city, the rights of citizens of the city were guarded in cases ordinarily cognizable by justices of the peace, over which the city court could not exercise jurisdiction. The precise effect of this constitutional provision, in regard to justices of the peace in cities, does not seem to have been considered in any of the reported cases where the jurisdiction of such a justice of the peace has been challenged. In the case of Geraty v. Reid, 78 N. Y. 64, a statute was under consideration which authorized the common council of the city of Brooklyn to divide the city into districts, for each of which a justice of the peace should be elected, who was to have the same jurisdiction as justices of towns had, in respect to towns for which they had been elected, and should be deemed justices of the peace of Kings county. It was held that it was not the intention of the statute to confer on such justices power to send process outside of Brooklyn, and it is intimated that, if such had been the legislative intent, the act would have been unconstitutional. But, when the law thus considered was passed, the constitutional provision of 1869 had not been adopted, and there was no provision (save that for the creation of local inferior courts) by which a justice of the peace could be elected, except by vote of the electors of an entire town. The cases, in which the constitutional provisions in regard to courts of inferior local jurisdiction have been discussed and applied, seem to have ranged themselves in two classes. They are either cases in which the legislature had created justices of the peace or other similar officers, not for cities, but for villages or for some portion of a town, or in which the attempt has been to vest a clearly local inferior court with jurisdiction outside of the locality for which it was created. To the first class may be assigned People v. Terry, 108 N. Y. 1, 14 N. E. 815; Bocock v. Cochran, 32 Hun, 521; Waters v. Langdon, 40 Barb. 408. To the second class, Rockwell v. Ray--

mond (City Ct. Yonkers) 5 N. Y. Supp. 642; Pierson v. Fries (Sup.) 38 N. Y. Supp. 765; Curtin v. Barton, 139 N. Y. 505, 34 N. E. 1093; Zieglar v. Corwin, supra; Baird v. Helfer, supra; People v. Upson, 79 Hun, 87, 29 N. Y. Supp. 615. The case at bar does not fall in either of those classes. It seems to me to have been a proper exercise of the constitutional power in regard to justices of the peace in cities.

The situation is not affected by the fact that, under the charter, the justice of the peace of the city of Auburn does not have the same jurisdiction as justices in towns. The constitutional provision referred to evidently contemplated justices of the peace in cities, with powers subject to definition and limitation by the legislature. That the legislature, in this particular case, has seen fit to deprive the justice of jurisdiction in cases where the city court can exercise jurisdiction, is simply an exercise of this constitutional right. People v. Duffy, 49 Hun, 276, 1 N. Y. Supp. 896; Ostrander v. People, 29 Hun, 513. In the case of People v. City of Rochester, supra, it was held that the legislature had power to abolish the offices of justices of the peace of the city of Rochester created by chapter 143 of the Laws of 1861, and it was said that their courts were local inferior courts. But in 1861, when this law was passed, there was no constitutional provision for justices of the peace except in towns, and the legislation then had could only have been valid as an exercise of the right to create "inferior courts of local jurisdiction." Dawson v. Horan, 51 Barb. 459. Since writing the foregoing opinion, my attention has been called to the fact that this question was passed upon in this court by my predecessor, Hon. S. E. Day, in 1888, in the case of Wride v. Counsel. In a carefully written opinion he discusses the cases decided to that time, arriving at the conclusion that the justice of the peace of Auburn has jurisdiction of an action begun by service of summons outside of the city of Auburn. None of the cases decided since that time, to which my attention has been called, seem to me to have in any way changed the situation.

The judgment appealed from is affirmed, with costs. Judgment affirmed, with costs.