(39 App. Div. 426.)

## GOULD v. MAHANEY et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

JUSTICE OF THE PEACE—JURISDICTION.

　　Under Const. 1869, art. 6, § 18, providing for justices of the peace in cities, with such powers and for such terms as shall be prescribed by law, and Laws 1886, c. 120, providing a charter for the city of Lockport, and authorizing justices of the peace, with "the same territorial jurisdiction as if said city constituted a part of the town of Lockport," a justice elected under such law has jurisdiction over the county in which Lockport is situated.

Appeal from Niagara county court.

Action by Harry N. Gould against Mary Mahaney and James M. Mahaney. From a judgment affirming a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Henry M. Davis, for appellants.
William E. Lockner, for respondent.

SPRING, J. The defendants, residing in the town of Pendleton, in the county of Niagara, were sued, at the instance of the plaintiff, a resident of the city of Lockport, in that county, before a justice of the peace of that city. The defendants did not appear, and judgment was recovered by default against them for the small sum unpaid on a promissory note held by the plaintiff. The proof showed that the defendants resided in the town of Pendleton, and the notice of appeal was accompanied with affidavits showing that the summons was served on each defendant in that town. The contention of the defending appellants on this appeal from the judgment of the county court is that the justice who issued the summons possessed no authority over the persons of the defendants, and that his judicial functions are confined to the city of Lockport.

The original charter of the city of Lockport was Laws 1865, c. 365. The office of justice of the peace for the city was recognized by that act, and with the probable design of making the jurisdiction of that official co-extensive with that of any of the justices of the peace within the limits of the county. Id. tit. 2, § 12. It is not now contended by the respondent's counsel that the powers sought to be vested in these officials were authorized by the constitution of 1846. Section 17 of article 6 of that constitution provided for the election of justices of the peace in the various towns, but no provision was made for those officials in the cities. It is settled by authority that this omission to create these officials prohibited their election in the cities. People v. Terry, 108 N. Y. 1, 14 N. E. 815; Geraty v. Reid,

78 N. Y. 64–66. Section 18 of article 6 of the constitution of 1869 supplied this omission. It provided:

"Justices of the peace and district court judges shall be elected in the different cities in this state in such manner and with such powers and for such terms respectively as shall be prescribed by law."

The succeeding section provided for local courts of inferior grade, also to be established by the legislature. A radical departure was made by this constitution from the one preceding. Two courts were authorized, of different jurisdictions,—one, that of justice of the peace, whose judge was of ancient existence, and possessed powers of a general character, and, within its sphere, of extensive authority; the other was purely and strictly local in its operations, and for the benefit of the people of the city in which the official resided. The failure to recognize the difference in the scope of these two courts has given rise to much litigation over their relative powers. By chapter 120 of the Laws of 1886, substantially a new charter was provided for the city of Lockport. By section 283, three justices of the peace are provided for the city, and by section 76 the duties of these functionaries are prescribed as follows: "He shall have the same territorial jurisdiction as if said city constituted a part of the town of Lockport." Section 70 prohibited a justice of the peace from exercising "jurisdiction of any criminal matter arising within said city," except in case the police justice is absent or unable to act. Section 277, in specific terms, repeals all previous acts inconsistent therewith; and that was the effect of the enactment without the repealing clause. Heckmann v. Pinkney, 81 N. Y. 211. Words similar to those ingrafted in the original charter have been held to be merely descriptive of the character of the office, and not to refer to its territorial jurisdiction. Curtin v. Barton, 139 N. Y. 505–513, 34 N. E. 1093; Brandon v. Avery, 22 N. Y. 469. The language of the revised charter, however, is unmistakable in its import, as the adjective "territorial" has been inserted, indicating the reference therein is to the extent of the jurisdiction. That addition marks the distinction between the original charter and the revised one, showing that in the latter the intent of the legislature was to make it certain that the jurisdiction of the official was to embrace the entire county. The constitution, therefore, required the election of justices of the peace in the towns, prescribing the length of the term. In cities, the creation of that court, the prescription of its powers and the length of the term, were all committed to the legislature. It was obviously in attempted consummation of this authority that the legislature provided the courts of justices of the peace, with jurisdiction coterminous with the county boundaries. This provision in the act of 1886 was futile, unless it was designed to provide for a judicial officer of like powers with those of every other justice of the peace within the county. The power to provide inferior courts for the exclusive use of the city was already ample. Inasmuch as there is no restriction in the constitution upon the authority of the legislature in its grant of power to the justices of the peace in cities, that body would be enabled to prescribe the same powers which are accorded to officials in towns.

It is contended that the addition to the constitution of 1869, empowering the legislature to create courts of justices of the peace in cities, was designed to permit an inferior court with jurisdiction confined to the city in which it existed. There was no necessity for such an amendment. The constitution of 1846, and that of 1869 as well, granted explicit permission to the legislature to organize these local courts. Either the intention was to permit the establishment of justices of the peace in cities of the character of those officials throughout the state, or else the section is surplusage. The constitution makers did not intend in one section to give warrant for the creation of inferior courts in cities, and then, in the very next section, solemnly reiterate this authority. In ascertaining the intent of the authors of the law, it is often instructive to refer to their discussion at the time of its consideration. When this section was under advisement in the constitutional convention of 1869, Mr. Murphy, who had it in charge, in explanation of the reason for its presentation, stated:

"I am unwilling that there should be in this constitution the blot, making the distinction between the electors of cities and those of the country. Such a distinction is unjust in principle, and unjust to the cities, which are discriminated against." Proceedings and Debates of the Constitutional Convention of 1867–68, vol. 5, pp. 3732, 3733.

It is a principle of construction that courts will adopt that which gives force and validity to a statute or section, rather than the one which avoids it. People v. Terry, 108 N. Y. 1, 14 N. E. 815. That the legislature intended to give this effect to this section I am now seeking to uphold is obvious; for, in prescribing the mode of procedure for courts of justices of the peace, those in cities and towns are treated alike. Code Civ. Proc. §§ 2868, 2869.

Even if the power to elect justices of the peace in the city of Lockport, with jurisdiction embracing the entire county, exists, it is urged that this was not accomplished by the act of 1886; that the office theretofore existing was not abrogated, but was simply enlarged, and hence is within the condemnation of Ziegler v. Corwin, 12 App. Div. 60, 42 N. Y. Supp. 855, and kindred authorities. The intent of the legislature is plain. It was to create the office of justice of the peace in the city of Lockport, not as a local officer, but with civil powers identical with the constitutional magistrate of that title. To make that intent effective, it saw fit to deal with officers as they existed. There were already three justices of the peace in the city, apparently exercising their functions outside the city, in violation of the constitution. They also possessed local powers. The legislature probably could have terminated the official life of these officers at once. Koch v. City of New York, 152 N. Y. 72, 46 N. E. 170. It did not elect to do so. It provided for new officials to take office upon expiration of the respective terms of the incumbents. It was not obligatory upon the legislature to abridge the terms of the justices in office. The whole matter of the provision of justices of the peace in cities was within the purview of the legislature, and it decided to make the annulment of the existing offices operative upon the expiration of the term of each incumbent. The

legislature possessed the power to abolish the existing offices of justice of the peace in the city of Lockport. People v. City of Rochester, 11 Hun, 241. The manner of its exercise was not defined or curtailed by the constitution. This is not a perpetuation of the same office, for each justice of the peace, prior to the enactment of the revised charter, was a city official, without authority to exercise his judicial functions beyond its limits. He was a local officer. The one devised by the new act possessed powers common to that official everywhere. There is nothing in the act which confers upon him any powers peculiar to the municipality. The recognized rule is that his authority is co-extensive with the boundaries of the county. Beach v. Baker, 25 App. Div. 9, 48 N. Y. Supp. 1042. We accordingly have constitutional warrant for the creation of this office by the legislature, and the execution of the authority intrusted to it by the lawmaking body.

In Baird v. Helfer, 12 App. Div. 23, 42 N. Y. Supp. 484, and Ziegler v. Corwin, 12 App. Div. 60, 42 N. Y. Supp. 855,—recent decisions of this department,—the question involved was as to the power to endow the municipal court of Rochester with jurisdiction over the entire county of Monroe. The act giving life to the court limited its jurisdiction, in plain terms, to the city of Rochester. There was no endeavor to abolish that court and create the court of justice of the peace in its stead, but there was a palpable attempt to enlarge the authority of this municipal court to embrace the county. There was no power in the legislature to make that extension. To carry that purpose into effect involved the commingling of a purely local court with one of general jurisdiction, and the constitution made these separate and distinct. In Geraty v. Reid, 78 N. Y. 64, and Brandon v. Avery, 22 N. Y. 469, the duties of the official in each instance were made, in the act creating them, to appertain exclusively to the locality. These cases, as I view the situation, are not in conflict with the conclusion that the constitution, since 1869, has vested the legislature with authority to provide courts of justices of the peace in cities with jurisdiction coincident with the county. See Ostrander v. People, 29 Hun, 513, affirmed in court of appeals.

There are two well-known canons of construction where the constitutionality of legislative enactments are involved: One, the act will not be held in contravention of the constitution unless the violation is palpable (People v. Budd, 117 N. Y. 13, 22 N. E. 670, 682; Dartmouth College v. Woodward, 4 Wheat. 625); second, that interpretation will be given which coincides with justice and the public demands, unless it runs counter to the fundamental law. No extraneous aid is necessary to spell out of the constitution a purpose to make the duties devolving upon justices of the peace in cities commensurate with those of the towns. No restriction is embodied in the language vesting the lawmaking power with authority to establish these courts. In the creation of this court in question, there was no enlargement of its powers beyond what is usual in the administration of that office. Unless this interpretation is followed, an invidious discrimination is upheld against the people of the city

of Lockport. To enforce their small claims against residents of their county, they would be forced to go outside their city, while they can be made to go to the remotest town in the county at the behest of a suitor residing in such town. A reasonable construction of the constitution, and of the act in pursuance of it, prevents this injustice.

The judgment is affirmed, with costs. All concur.